

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**
**U.S. COURTHOUSE**
**402 E. STATE STREET**
**TRENTON, NEW JERSEY 08608**

**Hon. Michael B. Kaplan**                                          **609-858-9360**
**Judge, United States Bankruptcy Court**

June 24, 2026

*All Interested Parties*

> Re:   *New Jersey Department of Labor and Workforce Development,*
> *Division of Unemployment and Disability Insurance v. Salvatore*
> *A. Guzzo*
> Case No. 25-13799 (MBK)
> Adv. Pro. No. 25-01284 (MBK)

Dear Counsel and Parties:

Before the Court is the Complaint filed by the New Jersey Department of Labor and

Workforce Development, Division of Unemployment and Disability Insurance (the "Department

of Labor" or "Plaintiff") against Salvatore A. Guzzo (the "Debtor" or "Defendant"), seeking a

determination that the debt owed to the Department of Labor is nondischargeable pursuant to 11

U.S.C. §§ 523(a)(2)(A) and 523(a)(7). *See* ECF No. 1. Defendant filed objections to Plaintiff's

trial exhibits. *See* ECF No. 8. The Court conducted a trial, at which Plaintiff presented testimony

from Kayla Williams, an investigator with the Department of Labor, and Defendant testified on

his own behalf.

1

The Court has considered the testimony, the admitted exhibits, the arguments of counsel, and the record in this adversary proceeding. For the reasons set forth below, judgment will be entered in favor of Plaintiff. The debt owed by Defendant to Plaintiff is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).

## I. Jurisdiction

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended September 18, 2012, and June 6, 2025, referring all bankruptcy cases to the bankruptcy court. This is a core proceeding under 28 U.S.C. § 157(b)(2)(J). Venue is proper under 28 U.S.C. § § 1408 and 1409.[1]

## II. Background and Procedural History

Plaintiff commenced this adversary proceeding seeking a determination that Defendant's debt to the Department of Labor is nondischargeable. *See* ECF No. 1. The Complaint alleges that, for the period beginning with the compensable week ending August 27, 2005 and continuing through the compensable week ending February 18, 2006, Defendant represented to the Department of Labor that he did not work, when in fact he was employed by J.W. Ferrell Concrete Co., Inc. ("J.W. Ferrell") and Scaranos Industrial Masonry Company, Inc. ("Scaranos") *Id.* at ¶ 2. Plaintiff further alleges that Defendant's failure to report employment and earnings caused the Department of Labor to pay unemployment benefits to which Defendant was not entitled. *Id.* at ¶¶ 2–3.

---

[1] The following constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052. To the extent that any finding of fact constitutes a conclusion of law, it is adopted as such, and to the extent that any conclusion of law constitutes a finding of fact, it is adopted as such.

The Department of Labor alleges that it relied on Defendant's representations and paid Defendant $11,086.00 in unemployment benefits. *Id.* at ¶ 3. After notice and an opportunity for a hearing, the Department of Labor determined that Defendant had received overpaid benefits and assessed a refund obligation in the amount of $14,526.94, including a statutory penalty of $2,771.50. *Id.* at ¶ 4. The Department of Labor acknowledges that Defendant has received a credit of $6,931.20, and alleges that interest accrued, leaving a balance due of $7,595.74. *Id.* at ¶¶ 5–6.

Prior to trial, Defendant objected to Plaintiff's exhibits. *See* ECF No. 8. Defendant argued that the documents were approximately twenty years old, that Plaintiff had not produced witnesses with personal knowledge of the underlying events, and that the records were hearsay, unauthenticated, speculative, and unduly prejudicial. *Id.* Defendant also argued that Plaintiff could not establish fraudulent intent through internal Department of Labor records or records prepared in connection with the Department of Labor's later investigation. *Id.* At trial, Plaintiff called Kayla Williams, an investigator with the Department of Labor. The Court found that Ms. Williams, as a Department of Labor employee familiar with the Department of Labor's systems and procedures, could lay a sufficient foundation for the Department of Labor's records under Fed. R. Evid. 803(6), 901, and, where applicable, 406. The Court overruled Defendant's foundational objections and admitted Plaintiff's exhibits.

Ms. Williams testified that the Department of Labor's records are maintained both electronically and in paper files. She explained that, once claim information and payment information are entered into the Department of Labor's electronic system, the claim-processing and payment information cannot be altered; any later adjustment appears as a separate entry. She further testified that the unemployment claim associated with Defendant's identifying information was filed by telephone, that a claimant filing by telephone must provide identifying information,

and that the claimant is asked eligibility questions, including whether the claimant is able and available for work, actively seeking work, and unemployed.

Ms. Williams testified that, after the initial claim is filed, the claimant is required to certify weekly for benefits. As part of that weekly certification process, the claimant uses a personal identification number and answers questions concerning continued eligibility, including whether the claimant worked during the week claimed. If the claimant answers that he worked, the system prompts the claimant to provide employer and earnings information. If the claimant answers that he did not work, no earnings are entered and the claim proceeds. Ms. Williams testified that, for the weeks at issue, the Department of Labor's records reflect that no earnings were reported by Defendant during the weekly certifications.

The Department of Labor's payment records show that an unemployment claim was filed on August 21, 2005, using Defendant's personal identifying information, including his Social Security number. Those records further show unemployment benefit payments issued for the weeks at issue, and they reflect no earnings reported by the claimant for those weeks. The Department of Labor's investigation began with its internal wage cross-matching process. Ms. Williams testified that, in the ordinary course, the Department of Labor cross-matches unemployment claims against employment and wage information maintained within the Department of Labor, including information reported through Employer Accounts. When that process identifies that a claimant may have been newly hired or otherwise employed during weeks for which benefits were claimed, the matter is flagged and the fraud investigation proceeds.

Once that wage-benefit conflict was identified, the Department of Labor sent wage requests to the employers in question. The employer responses reflected that Defendant worked for Scaranos and J.W. Ferrell during weeks in which unemployment benefits were issued on the claim

4

associated with Defendant's identifying information. *See* Plaintiff's Exhibits 38–53; 54–55. Those employer records were then used to cross-reference the weeks claimed by Defendant against the wages reported by the employers. Defendant admitted at trial that he worked for Scaranos and J.W. Ferrell during the relevant period.

The Department thereafter issued investigation letters and determinations advising Defendant that he had received benefits to which he was not entitled. The July 3, 2007 investigation letter, for example, advised Defendant that the Department's investigation revealed that he may have been employed during periods for which he claimed benefits; listed the weeks in conflict; identified the employers involved; reflected no reported income for those weeks; and calculated an overpayment of $6,240.00 for the weeks identified in that letter. *See* Plaintiff's Exhibits 78–80.

Defendant did not seriously dispute that he worked during the relevant weeks; rather, his position was that he did not recall collecting unemployment benefits during those same weeks. Defendant testified that he did not recall receiving certain notices, but he acknowledged receiving some Department of Labor correspondence. He also acknowledged that he became aware the Department of Labor was collecting the debt through tax refund offsets. He testified that the Department of Labor collected more than $7,000 from him, that he missed the appeal deadline, and that he did not thereafter contact the Department of Labor, retain counsel, or otherwise pursue relief.

After Plaintiff rested, Defendant moved for judgment under Rule 52, arguing that Plaintiff had failed to establish actual fraud. Although Defendant styled the request as a motion for a directed verdict, the matter was tried to the Court, and the request is properly treated as a motion for judgment on partial findings under Fed. R. Civ. P. 52(c), made applicable by Fed. R. Bankr. P.

7052. The Court reserved decision on the motion and permitted Defendant to proceed with his case. For the reasons set forth below, Defendant's Rule 52(c) motion is denied.

### III. Positions of the Parties

Plaintiff argues that the evidence establishes each element of § 523(a)(2)(A). Plaintiff contends that the claim was filed using Defendant's Social Security number and personal information, that Defendant certified weekly by telephone using a PIN, that Defendant failed to report earnings while working, and that the Department of Labor relied on those certifications in paying benefits. Plaintiff further submits that fraudulent intent may be inferred from the repeated weekly certifications, the failure to report any earnings, the issuance of benefit payments on the claim associated with Defendant's identifying information, and Defendant's failure to appeal or meaningfully challenge the Department of Labor's determinations despite tax offsets exceeding $7,000.

Defendant contends that Plaintiff failed to meet its burden. Defendant emphasizes that the claim is approximately twenty years old, that Plaintiff offered no witness who personally spoke with Defendant in 2005, that Plaintiff produced no bank records or signed certifications, and that the case rests primarily on Department of Labor records and employer records. Defendant further argues that Plaintiff failed to establish that Defendant personally made any false statement with the intent to deceive the Department of Labor. Defendant maintains that he would not have intentionally collected unemployment benefits while working full time or while receiving workers' compensation benefits.

The issues before the Court are whether Plaintiff established, by a preponderance of the evidence, that Defendant obtained unemployment benefits through false pretenses, false

representations, or actual fraud within the meaning of § 523(a)(2)(A), and whether the resulting debt is excepted from discharge.

### IV. Discussion

### A. Nondischargeability Under § 523(a)(2)(A)

Section 523(a)(2)(A) excepts from discharge any debt "for money, property, services, or an extension, renewal, or refinancing of credit" to the extent obtained by "false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). Section 1328(a)(2) incorporates § 523(a) into a Chapter 13, and therefore a debt of the kind described in § 523(a)(2)(A) is not discharged upon completion of a Chapter 13 plan. *See* 11 U.S.C. § 1328(a)(2). The party seeking to except a debt from discharge bears the burden of proving nondischargeability by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 281 (1991). Exceptions to discharge are generally construed narrowly against the creditor and liberally in favor of the debtor. *Ins. Co. of N. Am. v. Cohn*, 54 F.3d 1108, 1113 (3d Cir. 1995). But the Bankruptcy Code does not afford a discharge for debts incurred by fraud. *Id.*

To establish nondischargeability under § 523(a)(2)(A), Plaintiff must prove that: (1) Defendant made a false representation or engaged in false pretenses or actual fraud; (2) Defendant knew the representation was false or acted with gross recklessness as to its truth; (3) Defendant intended to deceive Plaintiff; (4) Plaintiff justifiably relied on the representation; and (5) Plaintiff sustained a loss proximately caused by the representation. *See In re Bocchino*, 794 F.3d 376, 380–81 (3d Cir. 2015).

Fraudulent intent may be inferred from the totality of the circumstances. *Cohn*, 54 F.3d at 1118–19. Because a debtor will rarely admit fraudulent intent, the Court may consider circumstantial evidence, including the debtor's course of conduct. *In re New Jersey Mobile Dental*

7

*Prac.*, P.A., 2012 WL 3018052, at \*13 (Bankr. D.N.J. July 24, 2012), *aff'd sub nom. Gvildys v. Beukas*, 2012 WL 5472121 (D.N.J. Nov. 9, 2012).

Once a debt is found to arise from fraud, § 523(a)(2)(A) excepts from discharge all liability arising from that fraud. *Cohen v. de la Cruz*, 523 U.S. 213, 218–23 (1998). Thus, the nondischargeable debt includes not merely the money initially obtained, but also related liability arising from the fraudulent conduct, including statutory penalties, interest, and other amounts imposed on account of the fraud. *Id.*

**B. Plaintiff Established That False Representations Were Made to the Department of Labor.**

The Court finds that false representations were made to the Department of Labor. An unemployment claim was filed using Defendant's personal identifying information, including his Social Security number. *See* Plaintiff's Exhibits 27–37. The Department's records reflect that the claim was filed on August 21, 2005 and that benefits were paid for the weeks at issue. *Id.*

The weekly certification process required the claimant to answer eligibility questions, including whether the claimant worked during the week claimed. Ms. Williams credibly testified that, if the claimant answered that he worked, the claimant would be prompted to provide employer and earnings information. If the claimant answered that he did not work, the claim would proceed without earnings being recorded. Ms. Williams further testified that, for the weeks at issue, the claim records reflected no earnings reported by the claimant.

The Department's internal wage cross-match first identified a potential wage-benefit conflict, which prompted the Department to request wage information from the relevant employers. The employer responses then confirmed that Defendant had earnings during weeks for which unemployment benefits were paid and no earnings were reported. *See* Plaintiff's Exhibits

8

38–53 and 54–55. Defendant admitted that he worked for Scaranos and J.W. Ferrell during the relevant period and admitted that he was working full time. Accordingly, Defendant's certification that he had no reportable work or earnings was false.

The Court rejects Defendant's suggestion that the absence of signed certifications or recordings of the telephone calls is fatal to Plaintiff's case. Fraud may be established by circumstantial evidence. The Department of Labor's ordinary claims process required weekly certifications; the payment records reflect that the certifications were made by telephone; the certifications were made in connection with the claim associated with Defendant's identifying information; the Department of Labor continued to issue benefits; and no earnings were reported despite Defendant's full-time employment. This is sufficient to establish that false representations were made to the Department of Labor.

**C. Plaintiff Established That Defendant Made or Caused the False Certifications.**

The more substantial question is whether Plaintiff proved that Defendant himself made, or caused to be made, the false certifications. The Court finds that Plaintiff has met that burden. The Department of Labor's records evidence that the claim was filed using Defendant's personal information and Social Security number. *See* Plaintiff's Exhibits 27–37. Ms. Williams testified that the claimant filing by telephone would answer eligibility questions and create or use a PIN for weekly certifications. She further testified that all of the relevant certifications were made by telephone.

Defendant did not testify that his identity was stolen. He did not identify any person who might have filed the claim or certified for weekly benefits on his behalf. He did not offer evidence that he reported identity theft, or contacted the Department of Labor at the time to advise that benefits were being issued in error. Nor did Defendant offer a plausible explanation for why

someone else would use his Social Security number and personal information, certify weekly for unemployment benefits, and cause benefits to issue on the claim without Defendant's knowledge or participation.

The Court recognizes that Plaintiff did not present a witness who personally spoke with Defendant in 2005 and did not produce a recording of the telephone certifications, but Plaintiff was not required to prove its case only through direct evidence. The circumstantial evidence strongly supports the conclusion that Defendant filed the claim or caused the weekly certifications to be made. The claimant used Defendant's personal identifying information; the certifications were made by telephone through the Department's PIN-based system; benefits were paid on the claim; Defendant later received Department notices; and Defendant later allowed tax offsets to continue without meaningful challenge. The Court therefore finds, by a preponderance of the evidence, that Defendant made, or caused to be made, the certifications that resulted in the payment of benefits.

**D. Defendant Knew the Certifications Were False or Acted With Gross Recklessness.**

The Court further finds that Defendant knew the certifications were false, or at minimum acted with gross recklessness as to their truth. The certifications concerned facts uniquely within Defendant's knowledge: whether he was working, whether he had earnings, and whether he was able and available for work. Defendant admitted that he was working full time for Scaranos and J.W. Ferrell during the relevant period. He also admitted that he suffered a shoulder injury in December 2005 and collected workers' compensation benefits. A claimant working full time cannot truthfully certify that he had no work or earnings. Likewise, a claimant receiving workers' compensation benefits because he is disabled cannot truthfully certify that he is able and available for work without disclosure.

The Court credits Ms. Williams's testimony regarding the Department of Labor's process. Claimants are asked weekly eligibility questions, including whether they worked during the week claimed. The process was not obscure. It required the claimant to answer direct questions concerning work, earnings, and eligibility. The record reflects that no earnings were reported for the weeks at issue, even though Defendant was working and earning wages. The repeated nature of the certifications is important. This was not a single isolated error. The records show a pattern of weekly certifications and payments over an extended period. The Court finds that Defendant's repeated failure to report work and earnings was not inadvertent, but knowing.

### E. Plaintiff Established Intent to Deceive.

The Court finds that Defendant acted with intent to deceive the Department of Labor. Intent may be inferred from the totality of the circumstances, and the circumstances here support such an inference!

- First, the misrepresentations were repeated. Defendant did not fail to report earnings only once. Week after week, no earnings were reported while Defendant was working and receiving wages.

- Second, the facts misrepresented were simple and known to Defendant. Defendant knew whether he was working. He knew whether he was receiving wages. He knew whether he had suffered an injury and was receiving workers' compensation benefits. These were not technical details or legal conclusions beyond Defendant's understanding.

- Third, benefits were issued as a result of the false certifications. The Department of Labor paid unemployment benefits on the claim associated with Defendant's identifying information. Defendant's testimony attempted to distance himself from those payments, but the

11

record reflects that the claim was filed using his identifying information and that payments issued because the weekly certifications reported no earnings.

- Fourth, Defendant's testimony lacked credibility. Defendant did not deny the basic employment and injury-related facts reflected in the Department of Labor's records. He acknowledged that he worked for Scaranos and J.W. Ferrell during the relevant period, that he sustained a work-related shoulder injury in December 2005, and that he received workers' compensation benefits. Yet, when asked about the unemployment benefits reflected in the Department's records, Defendant professed not to recall receiving the money. The Court finds that testimony unpersuasive. Defendant was able to recall the work injury, the nature of the work he was performing, and the workers' compensation claim, but claimed a lack of memory regarding the unemployment benefits paid under a claim filed using his personal identifying information. Defendant also acknowledged that he received at least some Department of Labor correspondence, that the Department of Labor later intercepted more than $7,000 from his tax refunds, and that he did not appeal or otherwise meaningfully challenge the debt after missing the appeal deadline. Those facts do not, standing alone, prove fraud, but they undermine Defendant's credibility and support the Court's finding that his lack-of-recollection testimony was not believable.

This later conduct is not, by itself, dispositive of whether Defendant intended to deceive the Department of Labor in 2005 and 2006. But it is probative. A person who truly had no involvement in the claim and received no unemployment benefits would be expected to challenge, at some point, the Department of Labor's repeated notices and interception of substantial tax refunds. Defendant's failure to do so, combined with his inconsistent testimony and the Department of Labor's records, supports an inference of fraudulent intent. Accordingly, the Court finds that Plaintiff established intent to deceive by a preponderance of the evidence.

**F. The Department of Labor Justifiably Relied on the Certifications.**

The Department of Labor also established justifiable reliance. The unemployment benefits system necessarily depends on claimants truthfully answering weekly certification questions. Ms. Williams testified that the Department of Labor relies on the claimant's answers and that, if a claimant reports earnings, the claim may be reduced or denied. Conversely, if the claimant reports no earnings, the claim proceeds.

The Department of Labor was justified in relying on the certifications made through the claim associated with Defendant's personal identifying information and processed through the Department's PIN-based certification system. The Department of Labor was not required, before making each weekly payment, to assume that Defendant was lying about his earnings or to independently verify every certification in advance. Indeed, the Department of Labor's later investigation demonstrates that the system contains safeguards, including wage cross-matching and employer wage requests, but those safeguards do not negate reliance at the time benefits are paid. The Court therefore finds that the Department of Labor justifiably relied on Defendant's weekly certifications.

**G. Plaintiff Established Loss Proximately Caused by the False Certifications.**

The Department of Labor paid unemployment benefits that Defendant was not entitled to receive. The Complaint alleges that the Department of Labor paid $11,086.00 in benefits and later sought a refund and penalties totaling $14,526.94, including a penalty of $2,771.50. *See* ECF No. 1 at ¶¶ 3–4. The Department of Labor credited Defendant $6,931.20, leaving the balance sought in this adversary proceeding. *Id.* at ¶¶ 5–6.

The Department of Labor's determinations and schedules of overpayment support the amounts claimed. Defendant did not present a competing calculation, did not show that the credits

were inaccurate, and did not establish that the Department of Labor's balance was overstated. Accordingly, the Court finds that Plaintiff established a debt in the amount of $7,595.74. Because the debt arises from Defendant's fraudulent procurement of unemployment benefits, the debt is nondischargeable under § 523(a)(2)(A). Under *Cohen*, the nondischargeable debt includes the liability arising from the fraud, including penalties, interest, and related amounts imposed on account of the fraudulent conduct. *Cohen*, 523 U.S. at 218–23.

**H. Defendant's Evidentiary and Factual Arguments Do Not Alter the Result.**

Defendant's principal evidentiary argument is that Plaintiff's case depends on old records and that Plaintiff did not produce witnesses with personal knowledge of the underlying events. The Court has considered that argument but finds it insufficient. Ms. Williams credibly testified regarding the Department of Labor's recordkeeping practices and claims procedures. The records were maintained in the ordinary course of the Department of Labor's activities. The electronic records were created and maintained as part of the Department of Labor's claims and payment system, and the employer wage records were obtained and maintained as part of the Department of Labor's investigation. The Court is satisfied that Plaintiff laid a sufficient foundation for the admitted exhibits.

Nor is Plaintiff's case defeated by the absence of bank records, recordings, or signed certifications. This was a telephone-based claim and weekly certification process. The Department of Labor's records identify the claim, the method of certification, the payments, and the absence of reported earnings. The employer records establish wages during the same period. Defendant admitted working full time during the relevant period. The workers' compensation records and Defendant's own testimony establish that Defendant later suffered a work-related injury and

14

received workers' compensation benefits. The record, taken as a whole, establishes fraud by a preponderance of the evidence.

Defendant also argues that he would not have intentionally collected unemployment benefits while working or while receiving workers' compensation benefits. The Court does not find Defendant's testimony on this point credible. The testimony is contradicted by the Department of Labor's records, the repeated weekly certifications, the absence of reported earnings, the issuance of benefits on the claim associated with Defendant's identifying information, Defendant's inconsistent testimony, and Defendant's failure to challenge the Department of Labor's determinations despite years of tax offsets. The Court therefore overrules Defendant's objections to the extent not previously resolved at trial and finds that Plaintiff has met its burden.

## I. Section 523(a)(7)

Plaintiff also seeks a determination under § 523(a)(7). Section 523(a)(7) excepts from discharge certain fines, penalties, or forfeitures payable to and for the benefit of a governmental unit and not compensation for actual pecuniary loss. 11 U.S.C. § 523(a)(7).

The Court need not separately determine dischargeability under § 523(a)(7) because Plaintiff has established that the debt is nondischargeable under § 523(a)(2)(A). The Court further notes that, in a completed Chapter 13 case, § 1328(a)(2) incorporates § 523(a)(2), but does not generally incorporate § 523(a)(7). Thus, to the extent any portion of the Department of Labor's claim is characterized solely as a § 523(a)(7) penalty, the discharge consequences may depend on the type of discharge ultimately entered and the procedural posture of the bankruptcy case. Here, however, the Court finds that the balance owed to the Department of Labor arises from Defendant's fraudulent procurement of unemployment benefits and is nondischargeable under § 523(a)(2)(A).

## V. Conclusion

15

For the foregoing reasons, judgment will be entered in favor of Plaintiff. The Court finds that Defendant obtained unemployment benefits through false representations and fraudulent conduct. An unemployment claim was filed using Defendant's Social Security number and personal information; weekly certifications were made by telephone; no earnings were reported; Defendant was in fact working full time during the relevant weeks; Defendant also received workers' compensation benefits in connection with a December 2005 work injury; and Defendant's testimony professing no recollection of receiving the unemployment benefits reflected in the Department of Labor's records was not credible.

The Court further finds that the Department of Labor justifiably relied on the certifications, paid benefits to which Defendant was not entitled, and sustained a loss. Defendant's later failure to appeal or meaningfully challenge the Department of Labor's determinations, despite the Department of Labor's collection of more than $7,000 through tax offsets, further supports the Court's credibility determination and the inference of fraudulent intent.

Accordingly, the debt owed by Defendant to Plaintiff in the amount of $7,595.74 is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A). Plaintiff is directed to submit a proposed form of judgment consistent with this Opinion.

Honorable Michael B. Kaplan
United States Bankruptcy Judge

Cc:  Filed on CM/ECF